ORIGINAL FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 03 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEONARD LUDWIGSEN,

                    Petitioner,

    -against-

JAMES CONWAY,

                  Respondent.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 09-CV-3524 (FB)

*Appearances:*
*For the Petitioner:*
LEONARD LUDWIGSEN, *Pro Se*
No. 05-A-0590
Attica Correctional Facility
PO Box 149
Attica, NY 14011-0149

*For the Respondent:*
CHARLES J. HYNES
Kings County District Attorney
By: SHULAMIT ROSENBLUM NEMEC
    Assistant District Attorney
350 Jay Street
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Petitioner Leonard Ludwigsen ("Ludwigsen") was convicted by a jury of second-degree intentional murder. The trail court imposed a sentence of 25 years to life. Ludwigsen appealed his judgment of conviction to the Appellate Division, which affirmed. *See People v. Ludwigsen*, 849 N.Y.S.2d 793 (2d Dep't 2008). His application for leave to appeal to the Court of Appeals was denied. *See People v. Ludwigsen*, 10 N.Y.3d 866 (2008). Ludwigsen timely sought a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. For the reasons stated below, his petition is denied.

**I**

        Ludwigsen claims that: (1) his judgment of conviction was "based upon legally insufficient evidence and was against the weight of the evidence," Pet'r Mem. of

Law at 2; (2) the trial court gave an improper charge with respect to "extreme emotional disturbance"; (3) the trial court improperly dismissed a juror, and improperly "manage[d] the behavior" of the remaining jurors, *id.* at 20; (4) evidence obtained through an illegal police search was improperly admitted at trial; and (5) the prosecutor's misconduct deprived him of the right to a fair trial. In addition, Ludwigsen alleges that (6) his trial counsel was ineffective.

## II

### A. Ludwigsen's *Pro Se* Status

Ludwigsen seeks relief *pro se*; the Court therefore reads his papers "liberally and interpret[s] them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal citation and quotation marks omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs a district court's power to grant a writ of habeas corpus to a state prisoner because of a constitutional violation that occurred in a state court proceeding. *See* 28 U.S.C. § 2254. If a state court rules on the merits of a claim, that ruling can only be reversed in habeas proceedings if it was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2)"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362,

402-11 (2000) (explaining deference required by AEDPA). If the basis of a claim has not been presented to a state court, AEDPA nonetheless permits a district court to deny a claim on the merits if it is "patently frivolous." *See* 28 U.S.C. § 2254(b)(2); *see also Ortiz v. Marshall*, No. 08-CV-8815, 2009 WL 3170300, at *5 (S.D.N.Y. Sep. 30, 2009) (noting that habeas court may deny unexhausted claims that are "patently frivolous").[1]

## C. Ludwigsen's Claims

### 1. *The Evidence Against Ludwigsen*

Ludwigsen argues both that the evidence against him was legally insufficient to support his conviction, and that his conviction was against the weight of the evidence. These are two separate claims, which are analyzed differently. *See People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). In his state appeal, Ludwigsen raised — and the court rejected — his weight of the evidence argument. *See Ludwigsen*, 849 N.Y.S.2d at 793 ("The defendant's contention that the jury's rejection of his extreme emotional disturbance defense was against the weight of the evidence is without merit."). "[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]" *McKinnon v. Superintendent, Great Meadow Corr. Facility*,

---

[1] The Second Circuit has not yet established a firm standard for denying unexhausted claims on the merits under 28 U.S.C. § 2254(b)(2), but each of New York's federal district courts have applied the "patently frivolous" test for dismissing such claims. *See, e.g., Hammock v. Walker*, 224 F.Supp.2d 544, 549 (W.D.N.Y.2002); *Toland v. Walsh*, No. 02-CV-0399, 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008); *Cruz v. Artuz*, No. 97-CV-2508, 2002 WL 1359386, at *14 (E.D.N.Y. June 24, 2002) (Block, J.); *Love v. Kuhlman*, No. 99-CV-11063, 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001).

No. 08–PR–2828, 2011 WL 2005112, at *4 (2d Cir. May 24, 2011). Thus, Ludwigsen's weight of the evidence argument is rejected.

Ludwigsen's legal sufficiency argument, however, does present a federal constitutional question. *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979) ("[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Ludwigsen, however, did not raise his legal sufficiency argument on direct appeal and it is thus unexhausted. Because Ludwigsen's petition includes both exhausted and unexhausted claims, it is a "mixed petition," and a court confronted with a mixed petition may do any one of three things: it can allow the petitioner to return to state court to exhaust his claims, it can allow the petitioner to amend his petition, withdrawing the unexhausted claims, or it can deny the unexhausted claims on the merits. *See Pratt v. Greiner*, 306 F.3d 1190, 1196–97 (2002). The Court chooses to reject Ludwigsen's legal sufficiency argument on the merits.

Ludwigsen "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. When reviewing a claim of legally insufficient evidence, a federal habeas court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Mannix v. Phillips*, 619 F.3d 187, 201 n.14 (2d Cir. 2010). Thus, a "petitioner bears a very heavy burden in

4

convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Id.*

The Court's best attempt to construe Ludwigsen's legal sufficiency argument—which is entangled with his sufficiency of the evidence argument—is that his signed confession was "a confession to an assault or domestic disturbance," Pet'r Mem. of Law at 2, but was not an admission of "intent to cause death" as required by New York's second-degree murder statute, *see* N.Y.P.L. § 125.25(1) (McKinney's 2009). Ludwigsen's confession, was admitted into evidence at trial. In it, he stated that during a conversation with the victim—his female roommate—about a week after a domestic dispute resulted in him telling her to move out of his apartment and her filing charges against him,

> she started crying saying that she fucked up her life again, she was smoking crack, doing heroin, and taking pills. All my talking wasn't doing no good. I could tell from her eyes and her voice that she was high as a kite and very angry at me. That I was going to pay, she was going to have me locked up anyway especially because of the other girl [I had been seeing]; she swung at me and smacked me, so we started wrestling. As I pushed her away, she must have banged her head on the metal bar that sticks out of the bed frame. I seen blood, I panicked. She got up swinging and throwing things at me. I got her down on the bed and just held her so she would calm down. After a minute or two, she stopped and I think she must have been up for a couple of days getting high like she used to. She would get high for a couple of days, on a mission, smoking crack, then she would sleep is what I thought. Okay, good, she went to sleep but I got nervous now.
>
> So, I said to myself what should I do, just let her sleep, just let her sleep it off. She seemed okay, so I went outside, locked the door, and even put a fan on her and got her a cup of water.

Trial Tr. at 205-06.

As the respondent correctly argues, however, Ludwigsen's signed confession was not the only evidence of his intent to cause death. The State also elicited testimony from the medical examiner who performed an autopsy on the victim. The medical examiner stated that when the victim's body arrived at the morgue, "[h]er mouth was wide open, and a blood stained, white athletic crew type sock was stuffed in the mouth." *Id.* at 67. A lug wrench found at the scene was "consistent with the object that caused" bruising on the victim's face, forehead, and chest. *Id.* at 73-78. In addition, the victim had a ligature furrow—a groove—around almost the entire circumference of her neck that ranged between "a quarter to three quarters of an inch in width by one, approximately, a quarter of an inch in depth." *Id.* at 70. The ligature furrow could have been caused by "a scarf, it could be a cord, it could be a belt." *Id.* Moreover, the medical examiner stated that in her opinion, the "cause of death was ligature strangulation." *Id.* at 71. An extension cord with blood on it was found at the crime scene.

The sock stuffed in the victim's mouth, the bruises on the face and forehead caused by a lug wrench, and the ligature furrow encircling her neck constitute evidence from which a rational juror could have found Ludwigsen's intent to cause death beyond a reasonable doubt. Thus, the Court rejects Ludwigsen's legal sufficiency claim as patently frivolous.[2]

_____

[2] Alternatively, the Court denies Ludwigsen's legal sufficiency claim because such a claim is based on the trial record, is waived if not raised on direct review, and "New York does not [] permit collateral attacks on a conviction when the defendant unjustifiably failed to

## 2. *Extreme Emotional Disturbance Jury Charge*

Ludwigsen argues that he was deprived of "his Constitutional Right to a fair trial and due process of law" because the trial court's jury charge on the extreme emotional disturbance affirmative defense was incorrect.[3] *See* Pet'r Mem. of Law at 18–20. As respondent correctly responds, however, this claim does not raise a federal question and "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991); *see also DiGuglielmo v. Smith*, 366 F.3d 130, 136–37 (2d Cir. 2004) (determining that an allegedly deficient instruction on justification defense did not present a federal question).

## 3. *Trial Court's Management of the Jury*

Ludwigsen argues that the trial court deprived him of his rights under the Sixth and Fourteenth Amendments by improperly dismissing a juror midway through the trial and by failing to admonish two jurors who were allegedly "nodding off" during a portion of the trial.

At the beginning of the fourth day of Ludwigsen's trial, the trial court stated:

> I've been informed that juror No. 1 had called in earlier this
> morning and spoke to the clerk of the Court and indicated that

---

raise the issue on direct appeal," *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001); thus, Ludwigsen's legal sufficiency claim could be deemed exhausted but procedurally barred. *See, e.g., Rodriguez v. Lee*, No. 10–CV–3451, 2011 WL 1362116, at *6 (S.D.N.Y. Feb. 22, 2011) (denying legal sufficiency claim as procedurally barred where habeas petitioner failed to raise it on direct review).

[3]The Appellate Division rejected this argument on direct review. *See Ludwigsen*, 849 N.Y.S.2d at 793.

she would not be coming into court today because her husband had been admitted to the hospital and diagnosed with cancer. . . . So, in light of that statement, and she said she definitely wasn't coming today. And, there was no indication that she would be coming tomorrow. I'm going to, for good cause, replace Juror No. 1 with Alternate No. 1.

Any objection?

Trial Tr. at 219–20. Both parties responded, "No, your honor." *Id.* at 220.

Ludwigsen argues that this juror's dismissal deprived him of his constitutional rights because "in the middle of the trial, the Court entertained a sworn juror's request to be excused from service for reasons not made a part of the record," and because the trial court failed to make "a reasonably thorough inquiry" into the veracity of the juror's excuse before excusing her. Petr's Mem. of Law at 20. Ludwigsen further argues that this juror's dismissal was particularly prejudicial because his trial counsel "was compelled to accept [the three alternates] under duress." Pet'r Mem. of Law at 22. Ludwigsen claims that during jury selection, "when counsel were deciding on the alternates, trial Court delivered an intimidating ultimatum that both counsel agree on three alternates lest the Court becomes [sic] upset." *Id.* The following is the allegedly duress-inducing colloquy:

THE COURT: All right. Gentlemen, lady. Let [sic] see if you can agree on three alternates, all right because otherwise I'll be upset.

(Discussion held off the record.)

THE COURT: What do you have now alternate No. 1 will be Osterfeld.

8

MR. KIMMEL [Petitioner's counsel]: Right.

THE COURT: You both agree.

MR. KIMMEL: Right.

THE COURT: No. 2 would be Gortych.

MR. KIMMEL: Barbara.

THE COURT: No. 3 would be Hodges.

MR. KIMMEL: Hodges, right.

THE COURT: Is that all right.

MR. APPEL [Prosecutor]: Yes.

MS. LYNCH [Another prosecutor]: Yes.

THE COURT: I real [sic] appreciate that.

Voir Dire Tr. at 162–63. The Appellate Division rejected this argument on direct review. *See Ludwigsen*, 849 N.Y.S.2d at 793.

Preliminarily, the Court notes that the trial court's reason for dismissing the juror was made a part of the record—her husband had just been admitted to the hospital and diagnosed with cancer—and that both lawyers affirmatively accepted the trial court's action. Ludwigsen does not point to any Supreme Court case that the Appellate Division's rejection of Ludwigsen's argument was "contrary to" or "an unreasonable application of." *See* 28 U.S.C. § 2254(d). Nor could the Court find any Supreme Court case stating that the Constitution requires a particular procedure before a trial court dismisses a sworn juror due to illness or other incapacity. Accordingly, AEDPA deference requires the Court to

deny Ludwigsen's claim. *See Hines v. Miller,* 318 F.3d 157, 164 (2d Cir. 2003) ("[Because of, *inter alia,*] the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding . . . that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.").

Assuming, *arguendo,* that the Constitution requires a "reasonably thorough inquiry" before the trial court may dismiss a juror for sickness or other incapacity, the record establishes that the Court's reason for dismissing the juror, coupled with Ludwigsen's counsel's assent, forecloses this claim on the merits.

Ludwigsen also argues that his right to a fair trial was violated when the trial court failed to admonish two jurors who allegedly "nodd[ed] off into what appeared to be a sleeping state."[4] Pet'r Mem. of Law at 23. Again, Ludwigsen does not provide a Supreme Court case that the Appellate Division's rejection of his argument was "contrary to" or "an

---

[4]During a recess near the end of the third day of Ludwigsen's trial, the following colloquy took place:

> MS. LYNCH: There were a couple of jurors that were nodding off. I don't know if Mr. Kimmel noticed but myself and Mr. Appel have. I just wanted to bring it to the Court's attention.
>
> THE COURT: Do you know which juror?
>
> MS. LYNCH: I certainly do. It's number four and the gentleman in the tie, six.
>
> THE COURT: Four and six, okay.

Trial Tr. at 211. The trial court did not say anything to the jurors upon their return to the courtroom.

10

unreasonable application of." 28 U.S.C. § 2254(d). Nor, again, could the Court find such a case.[5] Thus, AEDPA deference requires the Court to deny this claim.

### 4. The Allegedly Illegal Search of Ludwigsen's Apartment

Ludwigsen filed a pretrial motion challenging whether the police had probable cause to arrest him and whether his confession was made voluntarily. The trial court held a hearing on those issues. Ludwigsen did not, however, challenge the validity of the search warrant the police obtained for the purpose of searching his apartment. Ludwigsen argues that the search warrant was invalid because it was prepared by an assitant district attorney ("ADA") who had entered Ludwigsen's apartment without a warrant, and who had conducted a search at that time. This argument was rejected by the Appellate Division on direct review. *See Ludwigsen*, 849 N.Y.S.2d at 793.

As respondent correctly argues, however, the law is clear that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). All the Constitution guarantees is the *opportunity* to litigate the Fourth Amendment claim — whether or not the

---

[5]In a perhaps related context, the Supreme Court has not yet ruled on when a defendant suffers prejudice due to his lawyer's sleeping during trial. The Second Circuit has held that a defendant "suffer[s] prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake." *Tippins v. Walker*, 77 F.3d 682, 688 (2d Cir. 1996).

11

petitioner took advantage of that opportunity is irrelevant. *See Graham v. Costello*, 299 F.3d

129, 134 (2d Cir. 2002). The Second Circuit has since concluded that

> review of fourth amendment claims in habeas petitions would
> be undertaken in only one of two instances: (a) if the state has
> provided no corrective procedures at all to redress the alleged
> fourth amendment violations; or (b) if the state has provided
> a corrective mechanism, but the defendant was precluded from
> using that mechanism because of an unconscionable
> breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Neither circumstance existed here, and

therefore Ludwigsen's claim is denied.[6]

### 5. *Prosecutorial Misconduct*

Ludwigsen argues that during summation, the prosecutor improperly (a)

injected her personal opinion, (b) denigrated Ludwigsen and his defense, and (c) vouched

for witnesses. In addition, Ludwigsen claims that the prosecution (d) withheld material

evidence. According to Ludwigsen, these actions violated his right to a fair trial. The

Appellate Division rejected these arguments on direct review. *See Ludwigsen*, 849 N.Y.S.2d

at 793.

"A criminal conviction 'is not to be lightly overturned on the basis of a

prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v.*

---

[6]Ludwigsen also argues that "the trial mechanization for arguing a Fourth Amendment
violation was absent in this case due to trial counsel's neglect and omission." Pet'r Mem.
of Law at 25. The doctrine of *Stone v. Powell* does not apply to ineffective assistance claims,
*see Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986), and this claim is discussed in that
context below.

*Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (alteration in original) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, 'it is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Haynes v. Ercole*, No. 08–CV–3643, 2011 WL 2341277, at *10 (E.D.N.Y. June 8, 2011) (quoting *Darden v. Wainright*, 477 U.S. 168, 181 (1986)).

Preliminarily, the Court notes that none of the allegedly misleading statements now pointed to by Ludwigsen were objected to at trial, which is a "factor[] to be taken into consideration." *Malley v. Manson*, 547 F.2d 25, 28 (2d Cir. 1976).

### a. "Personal Opinion"

Ludwigsen points to three statements in particular that were of "personal opinion origin." Pet'r Mem. of Law at 27. Those statements were: (1) "You have his own words, his own statements saying he killed her," Trial Tr. at 329; (2) "It was an unfortunate accident. His very words in his written state [sic] on video an unfortunate accident," *id.* at 330; and (3)

> Clearly, the defendant knew she was dead when he left the room. Clear that he intentionally killed her.
>
> \*   \*   \*
>
> Look at these photographs and it is clear by the witness's statements and by the defendant's own words that the reason

13

she is dead and he killed her is because she was not going to say no to dropping these charges and that's nothing short of intentional murder.

*Id.* at 333. Ludwigsen argues that through these statements, the prosecutor "was attempting to mislead the jury into believing that Petitioner's statement to police was actually a confession to the murder." Pet'r Mem. of Law at 27. Ludwigsen concedes that his statements to police were "admissions to an assault." *Id.* at 28.

Respondent argues that these statements were all fair representations of the evidence, and moreover, they did not reach the high threshold necessary for a prosecutor's statement during summation to result in an unfair trial. The Court agrees.

Ludwigsen's statement to police was not the only statement of his presented at trial. The first allegedly misleading statement fairly represents the testimony of a prisoner at Riker's Island, Kevin Connolly, who testified that Ludwigsen had described his fight with the victim in detail and stated "'I knew she died when she peed her pants.'" Trial Tr. at 231. The second allegedly misleading statement is merely the prosecutor quoting from Ludwigsen's statement to police, in which he called what had happened "an unfortunate accident." *Id.* at 199. The third allegedly misleading statement also fairly represents Ludwigsen's statement to police and the trial testimony of Kevin Connolly. In his statement to police, Ludwigsen admited that a recent dispute between him and the victim led to a criminal complaint. In addition, Kevin Connolly testified that

> [H]e asked her [the victim] to come so he could smooth everything over with her. So, he wanted to talk everything

14

out. So, he had her come in and he told her that she had to drop the charges for the domestic violence.

* * *

I remember him saying he wanted them dropped because right now he's going through a problem with his ex-wife or soon to be ex-wife and she was going to try to get custody of the children. He said the domestic violence goes against him; he felt he would lose custody of his children. So, when she told him that she didn't want to drop it she told him I'm not going to drop this because, you know, I'm just not going to do it. He told me that he picked up a pipe and hit her over the head with it which made her a little woozy and he was still yelling at her, "You're going to drop the charges now," and she still said "No." So, when he got behind her he told me the got behind her in a choke hold and she was sitting on the floor and he was over here and choking her still screaming at her to drop the charges.

Trial Tr. at 229–30. The prosecutor's statements during summation fairly represented the evidence presented at trial, and therefore did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. at 643 (1974).

### b. *Denigrating the Defense and Defendant*

Ludwigsen argues that the prosecutor denigrated him and his extreme emotional disturbance defense by stating

[T]he ultimate excuse the defendant comes up with is extreme emotional disturbance. He has had an excuse for everything.

* * *

Well, we know that she needed to be murdered to silence her.

15

*   *   *

> Members of the jury, the defense is asking you to excuse him.
> First, by saying this is an accident not by saying he was under
> extreme emotional disturbance that he lost control because he
> has to crawl out of his hole, a hole that he dug himself by
> beginning what he did on August 27th.

Trial Tr. at 333–34.

As respondent correctly argues, this statement merely described the extreme emotional disturbance affirmative defense for what it is: an excuse. Neither this statement nor any others in the prosecutor's summation denigrated the defendant or his defense in a way that deprived him of a fair trial.

### c. Improper Vouching

Ludwigsen's argument that the prosecutor improperly vouched for government witnesses requires no extended discussion. Ludwigsen does not identify a single problematic statement from the prosecutor's summation, but merely argues that "[i]n this case, . . . the prosecutor was free to persuade the jury that his witnesses were worthy of belief." Pet'r Mem. of Law at 29. This is an apt description of a prosecutor's job, not evidence that Ludwigsen was denied a fair trial.

### d. Withholding Evidence

Ludwigsen argues that Kevin Connolly "emphatically testified that the prosecutor did not make any promises to him in return for his testimony." Pet'r Mem. of Law at 31. According to Ludwigsen, the government did not disclose that it had agreed to write a letter to the parole board stating the extent of Kevin Connolly's cooperation,

16

which violated the government's *Brady* obligation. The record, however, reflects that the prosecution brought out its promise to Kevin Connolly on direct examination: "And, sir, in return for your testimony today, I promised that I would give you a letter explaining that you're in court, explaining that you're here to tell the truth about what happened about what you know and I would send it to the parole board, correct?" Trial Tr. at 225. Thus, the prosecution did not withhold its promise to Kevin Connolly, and there was no constitutional violation.

### 6. Ineffective Assistance of Counsel

Ludwigsen argues that his trial counsel was ineffective for six reasons: (a) his pretrial investigation was inadequate; (b) he did not challenge a defective search warrant; (c) his cross-examination of witnesses was ineffective; (d) he "lacked sufficient knowledge of the jury selection process," *id.* at 11; (e) he failed to contact witnesses and present evidence favorable to Ludwigsen; and (f) his decision to present an extreme emotional disturbance defense was ill-conceived.

Ludwigsen's ineffective assistance claims are governed by the familiar *Strickland* test, which requires that he show "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." *United States v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel's performance is measured against "[r]easonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "A reviewing court must indulge a strong presumption that counsel's [performance] falls within the wide

17

range of reasonably professional assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different." *Wiggins*, 539 U.S. at 534. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* Either *Stickland* requirement may be used to dispose of a claim; indeed "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 670.

Ludwigsen raised the issue of his counsel's performance on direct review, and the Appellate Division rejected his arguments. *See Ludwigsen*, 849 N.Y.S.2d at 793. Thus, Ludwigsen must show that the Appellate Division's decision was either "contrary to" or "an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d). Ludwigsen does not identify such a Supreme Court precedent for any of his ineffective assitance of counsel claims.

### a. Pretrial Investigation

Ludwigsen argues that his counsel's pretrial investigation was constitutionally ineffective primarily because of a single, short dark hair allegedly found in the victim's hand. Ludwigsen has blond hair, and argues that his attorney should have submitted the dark hair for testing for the purpose of putting on a "wrong man" defense. Ludwigsen suggests that the hair may have matched the hair of his neighbor Derrick Stone, who had found the victim's body after breaking the lock on Ludwigsen's apartment door, and who had called the police.

Respondent argues that even had the hair been linked to a third person, including Derrick Stone, the evidence that Ludwigsen had committed the murder was so overwhelming that there is no reasonable probability the outcome of the trial would have been different. The Court agrees. Moreover, Ludwigsen's counsel questioned the medical examiner who had conducted the victim's autopsy about the dark hair during cross-examination; thus, the jury was aware that a hair that did not match Ludwigsen was found in the victim's hand. Ludwigsen has not satisfied *Strickland*'s prejudice prong.

Ludwigsen also argues that his attorney should have investigated "the condition of the entryway; accessibility of entry through the window; location and condition of furnishings; and credibility of the witnesses who were first on the scene as well as the first responders or assistant prosecutor." Pet'r Mem. of Law at 4. This conclusory statement cannot overcome the presumption that his attorney's action fell "within the wide range of reasonably professional assistance," *Gaskin*, 364 F.3d at 468; *see also McLean v. Green*, No. 05–CV–5603, 2009 WL 4778824, at *15 (E.D.N.Y. Apr. 15, 2009) ("Petitioner's conclusory assertions, absent additional specific support, are insufficient to overcome the strong presumption that counsel acted reasonably.").

### b. *Defective Search Warrant*

Ludwigsen claims the ADA who came to the crime scene "entered the apartment and conducted an invasive encroachment upon Petitioner's residence" for the purpose of obtaining a search warrant. Ludwigsen argues that this violated his Fourth

Amendment rights, and his counsel was ineffective for not trying to suppress the evidence obtained through the search warrant, and by not cross-examining the ADA.

Respondent correctly argues that the ADA's actions did not violate the Fourth Amendment, and therefore Ludwigsen's counsel was acting reasonably by not moving to suppress the evidence and by not engaging in cross-examination. At trial, the ADA was asked on direct examination what she was doing when she first arrived at the scene of the crime. She responded: "One of the things I was doing, I was trying to evaluate the scene, and in terms of writing the search warrant that the police felt was prudent in this case because it was Mr. Ludwigsen's apartment." Trial Tr. at 53. Ludwigsen provides nothing more than that testimony as evidence of the ADA's allegedly "invasive encroachment." There is no evidence that the ADA did anything more than conduct a circumscribed search of the apartment for the purpose of obtaining a search warrant. *See United States v. Klump*, 536 F.3d 113, 118 (2d Cir. 2008) ("[A]ny contraband or other evidence of a crime seen in plain view during such a circumscribed search may be used to establish probable cause to obtain a warrant to conduct a broader search.").

### c. Cross-examination of Witnesses

Ludwigsen argues that his attorney inadequately cross-examined witnesses, but he does not explain why cross-examination would have been useful. Such a bare assertion is insufficient to overcome the presumption that his attorney acted reasonably. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in

nature and generally will not support an ineffective assistance of counsel claim.") (internal quotation marks omitted).

### d. Jury Selection

Ludwigsen argues that his attorney was ineffective because he allowed the trial court to intimidate him into accepting alternate jurors, and because he failed to object to the trial court allowing the prosecution to exercise their peremptory challenges out of turn.

Respondent correctly argues that the trial court's statement that it would be "very upset" if the parties could not agree on alternates does not support an inference that Ludwigsen's attorney was intimidated into accepting unfit jurors. Moreover, the record does not support Ludwigsen's version of events with respect to peremptory challenges; thus, there was nothing that should have caused a reasonable attorney to object. Finally, Ludwigsen provides no reason that the outcome of the trial would have been different had the parties chosen different alternates.

### e. Failure to Present Witnesses and Evidence Favorable to Ludwigsen

Ludwigsen argues that his attorney was ineffective because he failed to call witnesses and provide documentary evidence that would have put more flesh to the bones of his extreme emotional disturbance affirmative defense. According to Ludwigsen, he "has a recorded history of psychiatric episodes, hospitalizations, and serious incidents where police records had been generated, which would have cast considerable support upon the proffered EED defense proposed by trial counsel." Pet'r Mem. of Law at 14.

21

Respondent correctly argues in response that Ludwigsen has failed to identify any particular witnesses or documents his attorney failed to admit, nor has he specified what the witnesses or records would prove; thus, he has satisfied neither of *Strickland*'s prongs. *See Edmonds v. Purdy*, No. 08–CV–8808, 2009 WL 483189, at *19 (S.D.N.Y. Feb. 26, 2009) ("[A] petitioner may not merely allege that certain witnesses might have supplied relevant testimony, but must state exactly what testimony they would have supplied and how such testimony would have changed the result.").

### f. Extreme Emotional Disturbance Defense

Ludwigsen argues that his attorney was ineffective because he failed to present a convincing extreme emotional disturbance defense, and he should have instead presented a wrong-man defense. According to Ludwigsen, his attorney did not consult him before presenting the extreme emotional disturbance defense, and the record reflects that his attorney did not mention the defense until his summation.

Because extreme emotional disturbance is an affirmative defense, the defendant bears the burden of persuasion. Had Ludwigsen's attorney presented a case rather than holding the prosecution to their burden, he may have presented a more effective extreme emotional disturbance defense. Moreover, "[d]efense counsel undoubtedly has a duty to discuss potential strategies with the defendant." *Florida v. Nixon*, 543 U.S. 175, 178 (2010).

Be that as it may, Ludwigsen has not named particular witnesses or documents that could have been used to strengthen his extreme emotional disturbance

22

defense. And faced with the strong evidence that Ludwigsen murdered the victim, there is no reason to think the outcome of the proceeding would have been different had his attorney presented a wrong-man defense. Thus, Ludwigsen has not satisfied *Strickland*'s prejudice prong, and the Appellate Division's denial of this argument was not "contrary to" or "an unreasonable application of" Supreme Court precedent.

### III

Ludwigsen's petition is denied. Since Ludwigsen has failed to make a substantial showing that any of his constitutional rights were denied, no certificate of appealability is granted. *See* 28 U.S.C. § 2253(c)(1).

**SO ORDERED.**

/Signed by Judge Block/

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 3, 2011